**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD KEARNEY,**

                                **Plaintiff,**

    vs.                                                              **9:15-CV-253**
                                                                            **(MAD/DJS)**

**D. GEBO,** _Correctional Officer, Great Meadow Correctional Facility_**; M. ROSS,** _Correctional Officer, Great Meadow Correctional Facility_**; and RAE,** _Sgt., Coxsackie Correctional Facility, formerly known as Roe_**,**

                                **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **KINDLON SHANKS & ASSOCIATES**<br>74 Chapel Street<br>Albany, New York 12207<br>Attorneys for Plaintiff | **GENNARO D. CALABRESE, ESQ.** |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **COLLEEN D. GALLIGAN, AAG**<br>**JUSTIN L. ENGEL, AAG** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In his *pro se* complaint dated February 19, 2015, Plaintiff asserts claims arising out of an incident which occurred on March 9, 2012 at Coxsackie Correctional Facility ("Coxsackie C.F."). *See* Dkt. No. 1 at 5-7. Specifically, Plaintiff claimed that he was subjected to excessive force, denied proper and adequate medical care, denied due process and improperly disciplined, denied Equal Protection, and retaliated against in violation of his constitutional rights and in violation of

the Americans with Disabilities Act ("ADA"). In a May 20, 2015 Decision and Order, the Court dismissed all claims with the exception of Plaintiff's excessive force and failure to intervene claims against Defendants Gebo, Ross and Rae. *See* Dkt. No. 7.

On September 19, 2016, the Court appointed Plaintiff trial counsel and scheduled trial to commence on January 9, 2017. *See* Dkt. Nos. 53, 56. On December 5, 2016, Defendants advised the Court of its intent to raise Plaintiff's failure to exhaust administrative remedies as an affirmative defense at trial. *See* Dkt. No. 61. Thereafter, on December 8, 2016, Defendants requested an exhaustion hearing prior to trial because Plaintiff is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* Dkt. No. 64. The Court granted Defendants' request and scheduled an exhaustion hearing for January 3, 2017. *See* Dkt. No. 65.

As set forth below, based on the parties' submissions and the testimony and evidence presented at the exhaustion hearing, the Court finds that Plaintiff failed to exhaust his administrative remedies and that he has failed to demonstrate unavailability. *See Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).

## II. DISCUSSION

### A.     Exhaustion

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available

administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S.

at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross v. Blake*, ___ U.S. ___ 136 S. Ct. 1850, 1855 (2016). "First, an administrative remedy may be unavailable when 'it operates as a simple dead

end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).[1]

**B.     Pre-hearing Submissions**

In his pre-hearing submission, Plaintiff contends that he was not required to comply with the PLRA's exhaustion requirement because "his subjection to excessive force during a transfer was not a 'prison condition' under 42 USCS 1997e(a)." Dkt. No. 85 at 1. In his submission, Plaintiff presents the following facts in support of his argument:

> [O]n March 9, 2012, Plaintiff was transferred from Great Meadow Correctional Facility to Coxsackie Correctional Facility via shuttle bus. When the shuttle bus arrived at Coxsackie Correctional Facility, Defendant Roe ordered Plaintiff off the bus and led him into the reception area. Without provocation or warning Plaintiff was struck and knocked to the ground. Defendants Gebo and Ross

---

[1] In *Ross*, the Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.* at 1862; *see also Williams*, 829 F.3d at 123 (recognizing that the framework set forth in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), setting forth a "special circumstances" exception to the PLRA's exhaustion requirement has been abrogated in part by *Ross*). As such, the Supreme Court specifically found that an inmate's mistaken belief that he has exhausted his administrative remedies, even where that belief seems reasonable, does not make the administrative remedy unavailable. *See id.* at 1858.

> then physically assaulted Plaintiff while he was on the ground. Defendant Roe was present but failed to intervene and prevent the physical assault. The Plaintiff has alleged in his Complaint that the Defendants' actions were unrelated to the duties and responsibilities of their employment. The Plaintiff asserts in his Complaint that he was targeted for exercising constitutional rights. For the foregoing reason, the Plaintiff was not required to exhaust his administrative remedies. *See Gibson*, 280 F.3d at 224; *Neal v. Goord*, 267 F.3d 116, 119-121 (2d Cir. 2001).

Dkt. No. 85 at 1-2. Finally, Plaintiff asserts that it is his "position that compliance with the PLRA's exhaustion requirement was unnecessary because he grieved directly to the Inspector General's Office." *Id.* at 2.

**C. Exhaustion Hearing**

On January 3, 2017, the Court held an exhaustion hearing. As its first witness, Defendants called Jeffrey Hale, the Assistant Director for DOCCS' Inmate Grievance Program. *See* Transcript of Exhaustion Hearing dated Jan. 3, 2017 ("Tr.") at 4-5. Mr. Hale, who has been in his position with DOCCS since March of 2010, testified that, as part of his responsibilities, he provides oversight for the IGP and ensures that it is operating according to DOCCS' directives and policies. *See id.* at 5. Moreover, Mr. Hale testified that he provides oversight of the inmate grievance programs run at the individual correctional facilities and responds to issues that may arise with these programs. *See id.*

Mr. Hale also discussed his understanding of the PLRA and the three-tiered IGP implemented by DOCCS. *See id.* at 6-11. According to Mr. Hale, Directive 4040, which sets forth DOCCS' policy for inmate grievances, provides that complaints can be sent to the Inmate Grievance Resolution Committee ("IGRC") or the IGRC clerk at the facility at which the inmate is housed. *See id.* at 6. Further, complaints are not required to be submitted on the official form provided by the facilities. *See id.* at 6-7. Rather, the complaint "can be on a plain piece of paper,

6

it can be on the back of an envelope, it can be on any form of anything that he can write on and send it to . . . the Inmate Grievance Office." *Id.* Mr. Hale also testified about the procedural safeguards that are in place to assist inmates with filing grievances. *See id.* at 11-13. According to Hale, section 701.6 of Directive 4040 provides inmates with these safeguards, including, among other things, extensions of time for inmates physically unable to timely file a grievance and the ability to challenge the IGP supervisor's decision to return a grievance that was deemed untimely. *See id.* at 11-12. Further, Hale testified that in 2012, inmates housed in the Special Housing Unit ("SHU") were provided additional safeguards not provided to inmates in general population. *See id.* at 12. As set forth in section 701.7, the IGP supervisor or an IGP staff member is required to make weekly rounds in the SHU to handle any grievance issues. *See id.*

Hale also testified that he provided oversight of the IGP at Coxsackie C.F. in March of 2012. *See* Tr. at 12-13. During that time, the IGP supervisor at Coxsackie C.F. provided Hale with monthly reports and had regular contact with his office. *See id.* Throughout 2012, the CORC regularly received grievance appeals from Coxsackie C.F. and Hale was unaware of any interruptions in the grievance process at the facility. *See id.* at 13.

At the request of the Attorney General's Office, Hale searched for an appeal to the CORC of any grievance filed by Plaintiff in connection with the alleged March 9, 2012 assault. *See id.* at 13-14. Hale testified that the CORC did not receive any such appeal. *See id.* at 14-15 (discussing his correspondence with the Attorney General's Office and the printout of the case search that was introduced into evidence). In his search, however, Hale learned that, prior to June of 2015, Plaintiff had exhausted his administrative remedies on eight separate occasions. *See id.* at 15-16.

During cross-examination, Hale acknowledged that the regulations indicate that IGP grievance forms are supposed to be available to inmates in the SHU. *See* Tr. at 19. Despite this

7

requirement, Hale further reiterated that, although the forms are required to be made available in the SHU, grievances can be submitted on any type of paper if the standard form is not available. *See id.* Directive 4933 also mandates that inmates in the SHU be provided with certain supplies, including paper, writing utensils, and envelopes. *See id.* at 20. Also during cross-examination, Hale provided additional details regarding the grievance procedure for inmates in the SHU. *See id.* at 23-26. For example, to appeal to the CORC, when a SHU inmate receives a Superintendent's response, the inmate need only sign the response, indicate his or her intent to appeal, place it in an envelope, and return it to the Inmate Grievance Office. *See id.*

As their next witness, Defendants called Tisha Suprenant, who has been the Inmate Grievance Program Supervisor at Coxsackie C.F. since July of 2016. *See* Tr. at 29. As part of her responsibilities as the Inmate Grievance Program Supervisor, Suprenant testified that she maintains the grievance files for the current year, plus four years prior, as well as correspondence. *See id.* According to Suprenant, "[e]ach grievance that's submitted gets a grievance calendar number, it's logged on the clerk's log, the inmate is notified, he gets a receipt notifying him of what the title is, the code and that we've received his grievance. And then we – depending on what the title and code is, if the inmate is entitled to a grievance hearing or if it's a harassment grievance, it gets immediately forwarded to the Superintendent." *Id.* at 29-30.

In connection with this case, Suprenant searched the records in the Inmate Grievance Office for any grievances or correspondence filed by Plaintiff in 2012 and was unable to locate any such documents. *See id.* at 31. Moreover, Suprenant testified that she reviewed the log book at Coxsackie C.F. from March of 2012 and, while grievances were filed throughout the month by other inmates, none were filed by Plaintiff. *See id.* According to Suprenant, the log book demonstrates that the IGP at Coxsackie C.F. was operating in March 2012 because grievances

8

were continuously filed by inmates (other than Plaintiff) and processed by her office. *See id.* at 31-32. This fact is further verified by the report created by the Inmate Grievance Program Supervisor serving in March of 2012. *See id.*

Plaintiff was the only other witness to testify at the January 3, 2017 hearing. *See* Tr. at 35. Plaintiff described the alleged attack when he first arrived at Coxsackie C.F. on March 9, 2012 and the fact that he was then housed in the SHU for approximately twenty days. *See id.* at 36-38. According to Plaintiff, while he was housed in the SHU in March of 2012, he never received "inmate grievance complaint forms" from the area supervisor or any other staff. *See id.* at 41.[2] Further, Plaintiff claims that he was not initially provided envelopes and that he did not receive "material until [he] wrote [his] complaints to the IG – first the Superintendent, . . . and the IG and the Commission." *Id.* Plaintiff also testified that he did not recall anyone from the IGP making rounds in the SHU. *See id.* Rather, Plaintiff claims that he was generally isolated and only occasionally saw a nurse who came to provide him with medication. *See id.*

During his testimony, Plaintiff also discussed complaints and letters he wrote to several entities regarding the alleged assault. *See id.* at 41-44. For example, Plaintiff wrote a complaint to the State Commission of Correction on March 21, 2012. *See id.* at 42-43 (citing Plaintiff's Exhibit 11). Moreover, Plaintiff testified that on April 11, 2012, he received a letter from the Commission of Corrections, in which it was determined that, following an investigation, "there is absolutely no evidence to support the allegations[.]" *Id.* at 43-44 (quoting Plaintiff's Exhibit 12). According to Plaintiff, once he completed his complaints to the Commission of Corrections and

---

[2] The Court notes that while Plaintiff testified that he did not receive these forms, he does not allege that he requested the forms and that his request was denied.

9

the Inspector General, they were placed in the mail and eventually received by these entities. *See id.* at 47-48.

On cross-examination, Plaintiff further elaborated that, as set forth in his complaint, he also sent a complaint to the DOCCS Inspector General on March 19, 2012 regarding the alleged assault. *See* Tr. at 44-45. Plaintiff claims that he drafted and sent these complaints once he received the necessary supplies and further acknowledged that, as of March 19, 2012 he had been provided these supplies. *See id.* at 45. When asked whether he filed a grievance regarding the March 9, 2012 assault, Plaintiff responded as follows:

> Ma'am, these visits here, assured me they was takin' care of the matter and it was under investigation, even the IG came to visit me, matter of fact, and there was official, I don't know what rank he was, he was in a plain suit, he came to the cell . . . and assured me the matter was under investigation and he was gonna take care of it, but he never returned.

*Id.* at 45. Plaintiff further testified that he wrote to the Commission of Corrections and the Inspector General's Office because the assault against him was "criminal" and these entities "have the power to investigate – they have the law powers, investigating – by law to investigate criminal matters[.]" *Id.* at 51-52.

**D. Application**

***1. "Prison Conditions"***

Both in his pre-hearing submission and during the exhaustion hearing, Plaintiff argued that the allegations in his complaint do not constitute "prison conditions" and, therefore, the PLRA's exhaustion requirements are inapplicable to the present matter. *See* Dkt. No. 85 at 1; *see also* Tr. at 58. Specifically, Plaintiff contends that "compliance with the PLRA's exhaustion requirement

was unnecessary because his subjection to excessive force during a transfer was not a 'prison condition' under 42 USCS 1997e(a)." Dkt. No. 85 at 1.

Contrary to Plaintiff's position, the exhaustion requirements of the PLRA applied to his allegations in the present matter. Plaintiff's reliance on *Gibson* and *Neal* is misplaced. In *Neal*, the plaintiff brought claims for inadequate medical treatment after he suffered a lower back injury. *See Neal*, 267 F.3d at 118. The plaintiff argued that because he alone suffered the alleged misconduct on isolated occasions, his claim did not relate to "prison conditions" and was therefore not subject to the PLRA exhaustion requirement. *See id.* at 120. Although the Second Circuit disagreed with the plaintiff and found that his claim was subject to the PLRA's exhaustion requirement because it related to "prison conditions," the court noted that the decision hinged on whether the action was "properly classified as a single, momentary matter . . . [or one that] affect[s] everyone in the prison community." *Id.* at 117. In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court specifically rejected the Second Circuit's interpretation of "prison conditions," and held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532; *see also Curry v. Mazzuca*, No. 02 Civ. 4477, 2004 WL 2368013, *3 n.2 (S.D.N.Y. Oct. 22, 2004) (noting that the portion of the *Neal* holding that "prison conditions" within the meaning of the PLRA are only "those aspects of prison life affecting the entire prison population" was overruled by *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).[3]

---

[3] In *Gibson v. Goord*, 280 F.3d 221 (2d Cir. 2002), the Second Circuit relied on the same interpretation of "prison conditions" that was subsequently rejected in *Porter*.

11

As such, the Court finds that Plaintiff's allegations unquestionably pertain to "prison conditions" as set forth in *Porter* and, therefore, are subject to the exhaustion requirements of the PLRA.

### *2. Complaints to the Inspector General and Commission of Corrections*

Plaintiff also argues that "compliance with the PLRA's exhaustion requirement was unnecessary because he grieved directly to the Inspector General's Office." Dkt. No. 85 at 2. At the exhaustion hearing, Plaintiff's counsel argued that it was Plaintiff's "understanding that the Commission of Corrections investigated these types of matters, as well as he submitted a complaint to the Inspector General's Office and he had the same understanding as regards to the Inspector General's Office." Tr. at 58-59.[4]

First, to the extent that Plaintiff is arguing that he was not required to comply with the PLRA's exhaustion requirement because he "grieved directly to the Inspector General's Office" and the Commission of Corrections, the Court disagrees. Previously, courts in the Second Circuit had held that "'a letter to the Superintendent who then commences an Inspector General investigation can constitute 'special circumstances' that satisfy the PLRA requirement that prison officials be afforded time and opportunity to address prison complaints internally.'" *Winfield v. Bishop*, No. 9:09-cv-1055, 2013 WL 4736378, *6 (N.D.N.Y. Sept. 3, 2013) (quotation omitted). As discussed above, however, the Supreme Court recently rejected the Second Circuit's "special circumstances" exception to the PLRA's exhaustion requirement. Therefore, Plaintiff's complaint

---

[4] The Court believes that counsel is possibly attempting to make two separate arguments here: (1) that filing complaints with either the Inspector General or the Commission of Corrections constitutes exhaustion for purposes of the PLRA and (2) that, even assuming these complaints do not constitute exhaustion, Plaintiff's belief that these were the appropriate entities with which to file his complaints constitutes "special circumstances" justifying his failure to properly exhaust.

to the Inspector General's Office, which does not constitute complete and proper exhaustion under New York's grievance scheme, cannot excuse his failure to exhaust.

Even prior to *Ross*, the Second Circuit had held that a plaintiff's complaint to the Inspector General, which prompted an investigation, did not constitute a "special circumstance" justifying the plaintiff's failure to exhaust where it was clear from the subject matter of the plaintiff's complaint that the Inmate Grievance Procedure required him to pursue his claims before the CORC. *See Dabney v. Pegano*, 604 Fed. Appx. 1, 4 (2d Cir. 2015) (citation omitted); *see also Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (refusing to excuse an inmate's failure to exhaust notwithstanding the Inspector General's investigation of her claim). It was clear from the subject matter of Plaintiff's complaint that the IGP required him to pursue his claims before the CORC to fully exhaust his administrative remedies. *See id.*

The Court also finds that the testimony and evidence presented at the exhaustion hearing clearly established that the grievance process was available to Plaintiff and that he simply failed to avail himself of it. It was established at the hearing that Plaintiff was provided the necessary supplies to submit complaints to the Inspector General's Office and the Commission of Corrections. Although Plaintiff argues that he was not given a IGP complaint form, which are required to be available to inmates in the SHU, he does not claim that he requested one. Further, Mr. Hale testified (and the regulations clearly provide) that a grievance does not need to be submitted on the official form. *See* 7 N.Y.C.R.R. § 701.5(a)(1).

Moreover, at the hearing, it was established that Plaintiff sent his complaints to the Inspector General and the Commission of Corrections on March 19 and 21. These complaints clearly demonstrate that Plaintiff was provided with the material and means necessary to submit a timely grievance with the IGRC by March 30, 2012. Even assuming such a grievance had been

13

filed, dismissal is still required because the evidence further demonstrated that Plaintiff failed to appeal to the superintendent and then the CORC. *See Khudan v. Lee*, No. 12-cv-8147, 2016 WL 4735364, *4 (S.D.N.Y. Sept. 8, 2016) (citations omitted). Both Hale and Suprenant testified that a diligent search failed to produce any record of such a grievance or appeals.

Further, the Court finds that Plaintiff has failed establish that the IGP's grievance process was unavailable to him. Plaintiff failed to present any evidence or credible testimony demonstrating that the IGP was unavailable because (1) it operated as a simple dead end, (2) it was so opaque that it was, practically speaking, incapable of use, or (3) prison officials thwarted him from taking advantage of it. *See Ross*, 136 S. Ct. at 1859-60. Plaintiff has not alleged that he was thwarted from filing such a grievance by prison officials, nor could he since the evidence demonstrated that they assisted him in filing his complaints with the Inspector General and Commission of Corrections while he was confined in the SHU. As to the other two "scenarios" identified in *Ross*, Plaintiff has neither argued nor pointed to any admissible evidence that the IGP operated as a simple dead end or that it was "so opaque that it [became], practically speaking, incapable of use" and therefore "essential 'unknowable.'" *Ross*, 136 S. Ct. at 1859. Although the Second Circuit recently found that certain grievance procedures under the IGP met this latter standard, the court's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016). Specifically, the plaintiff in *Williams*, who was housed in a special housing unit and segregated from the regular prison population, gave his grievance complaint to a correction officer to file on his behalf. *See id.* at 119-22. However, the plaintiff alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance

14

whatsoever to an inmate whose grievance was never filed," *id.* at 124, it reversed the district court's dismissal for failure to exhaust. Here, however, the regulations clearly provided that, even while housed in the SHU, Plaintiff was required to file a grievance with the IGRC, then appeal to the Superintendent, and then the CORC, all of which he failed to do. Given this unambiguous directive and the fact that Plaintiff's compliance was not in any way hindered by the actions of anyone else, Plaintiff has clearly failed to show that the IGP was "essentially unknowable." *Ross*, 136 S. Ct. at 1859.

Plaintiff was no stranger to the IGP and his unreasonable and mistaken belief that he did not need to file a grievance and appeal through the IGP does not excuse his failure to exhaust. *See Lewis v. Sheridan*, No. 9:12-cv-31, 2015 WL 1449163, *7 (N.D.N.Y. Mar. 30, 2015) (holding that "[i]t is well settled that simply complaining to [the facility superintendent, DOCCS Commissioner, and DOCCS Inspector General], without appealing any of their responses to the CORC (which plaintiff in this case does not allege), is not sufficient to satisfy the PLRA's exhaustion requirement") (citations omitted). In light of the fact that none of the exceptional scenarios outlined by the Supreme Court in *Ross* apply, the Court finds that the administrative remedies were available to Plaintiff at Coxsackie C.F. Therefore, the Court grants Defendants' motion and dismisses this action.

### III. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss for failure to exhaust is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that pro bono trial counsel, Gennaro D. Calabrese, is relieved as pro bono counsel effective immediately;[5] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:   January 4, 2017
            Albany, New York

---

[5] The Court expresses its thanks to pro bono counsel for his dedicated and highly professional assistance.